```
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

JASON HOWELL,

                Plaintiff,          6:17-CV-06568(MAT)
        -v-                         DECISION AND ORDER

NANCY A. BERRYHILL,
Acting Commissioner OF Social Security,

                Defendant.
_____
```

## INTRODUCTION

Jason Howell ("Plaintiff"), represented by counsel, brings this action under Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner" or "Defendant") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

## PROCEDURAL BACKGROUND

On February 22, 2011 and April 27, 2011, Plaintiff protectively filed applications for DIB and SSI, respectively, alleging disability as of September 1, 2008, due to a learning disability, anxiety, speech problems, anger problems, testicular lesions, and mild thoracolumbar scoliosis. Administrative

Transcript ("T.") 313-20,338. The claims were initially denied on June 17, 2011.  T. 152-67. At Plaintiff's request, a hearing was conducted on December 14, 2012, in Baltimore, Maryland by administrative law judge ("ALJ") Andrew Henningfeld, with Plaintiff appearing via video conference with his attorney. A vocational expert also testified. T. 75-118.  ALJ Henningfeld issued an unfavorable decision on February 15, 2013. T. 128-40. Plaintiff appealed the decision to the Appeals Council ("AC"), which remanded the case on August 26, 2014 for further development. T. 145-48. A new hearing was held on May 15, 2015 in Rochester, New York, by ALJ Brian Kane.  T. 27-74. Plaintiff appeared with his attorney and testified. An impartial VE also testified.

ALJ Kane issued an unfavorable decision on June 24, 2015. T. 8-20.  On June 16, 2017, the AC denied Plaintiff's timely request for review, making the ALJ Kane's decision the final decision of the Commissioner.  T. 1-4. This action followed.

## THE ALJ'S DECISION

ALJ Kane applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. *See* 20 C.F.R. § 404.1520(a).

At step one of the sequential evaluation, ALJ Kane found that Plaintiff had not engaged in substantial gainful activity since September 1, 2008, the alleged onset date. T. 13. Although Plaintiff had worked on a part-time basis since the onset date, ALJ

2

Kane found this work activity did not rise to the level of substantial gainful activity. *Id*.

At step two, ALJ Kane determined that Plaintiff had the following "severe" impairments: anxiety, depression, and low back pain. *Id.* ALJ Kane also noted that Plaintiff alleged he is learning disabled, has a speech problem, and has testicular lesions. However, ALJ Kane found Plaintiff's intellectual functioning was assessed to be in the average range (his full-scale IQ score from when he was 12 years old was 103); he was able to communicate appropriately with his providers and during the hearing despite his stutter; and there was no evidence Plaintiff's small irregularity on his right testicle was cancerous. Accordingly, ALJ Kane found these additional impairments to be non-severe. *Id.*

At step three, ALJ Kane found that Plaintiff's impairments did not singularly or in combination meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. T. 14.

Before proceeding to step four, ALJ Kane found that Plaintiff has the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(c) and 416.967(c), with the following additional limitations: can lift and carry up to fifty pounds; can sit no more than six hours; can stand or walk for up to six hours; and is able to perform work requiring training of one month or less. T. 15. At step four, ALJ Kane concluded that

Plaintiff was capable of performing past relevant work as a fast food worker, cook helper, sales attendant, laborer, or cashier II. T. 19. ALJ Kane accordingly found at step five that Plaintiff was not disabled as defined in the Act. *Id.*

## SCOPE OF REVIEW

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. *See* 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d

172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

**DISCUSSION**

Plaintiff contends that remand is warranted for the following reasons: (1) the ALJ failed to make a step two severity finding regarding Plaintiff's migraines and Osgood-Schlatter's Disease; (2) the ALJ failed to properly evaluate the opinions of consultative examiners Dr. Kristina Luna and Dr. Rita Figueroa, resulting in a finding not supported by substantial evidence; and (3) the ALJ improperly used Plaintiff's failure to seek treatment as proof his conditions were not as disabling as alleged. For the reasons discussed below, the Court finds Plaintiff's arguments without merit and affirms the Commissioner's final determination.

**I. The ALJ's Omission of Plaintiff's Migraines and Knee Pain at Step Two was Harmless Error**

Plaintiff argues ALJ Kane committed legal error at step two of the sequential analysis, because he did not consider whether Plaintiff's migraines and Osgood-Schlatter's disease were severe impairments. For the reasons discussed below, the Court agrees with the Commissioner that any error by ALJ Kane at step two was harmless.

At step two, the ALJ is required to consider whether a claimant's medically determinable impairments are severe. Notably, "[i]t is the claimant's burden to show at step two that [h]e has a severe impairment." *Rye v. Colvin*, No. 2:14-CV-170, 2016 WL

5

632242, at *3 (D. Vt. Feb. 17, 2016) (internal quotation omitted). A step two error does not necessitate remand where the record is devoid of evidence that the allegedly omitted impairments were severe. *Id.* at *4 (declining to remand where the plaintiff did not "specify why each of these impairments [that he contended were omitted at step two] meets the regulatory definition of a 'severe' impairment").

Moreover, "[c]ourts have developed a specialized variant of harmless-error analysis with respect to Step 2 severity errors in social security proceedings. . . . [W]hen an administrative law judge identifies some severe impairments at Step 2, and then proceeds through [the] sequential evaluation on the basis of [the] combined effects of all impairments, including those erroneously found to be non severe, an error in failing to identify all severe impairments at Step 2 is harmless." *Poles v. Berryhill*, No. 17 CV 6189 MAT, 2018 WL 1471884, at *3 (W.D.N.Y. Mar. 26, 2018) (quoting *Snyder v. Colvin*, No. 5:13-CV-585 GLS/ESH, 2014 WL 3107962, at *5 (N.D.N.Y. July 8, 2014)); *see also Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (step two error was harmless where all of the claimant's conditions "were considered during the subsequent steps"). "Specifically, when functional effects of impairments erroneously determined to be non-severe at Step 2 are, nonetheless, fully considered and factored into subsequent residual functional capacity assessments, a reviewing court can confidently

6

conclude that the same result would have been reached absent the error." *Snyder*, 2014 WL 3107962 at *5.

Here, Plaintiff has not shown that his migraines and Osgood-Schlatter's disease, which caused him knee pain, were severe impairments. As ALJ Kane noted, Plaintiff's first treatment for knee pain did not occur until April 2011 (more than two years after Plaintiff's alleged onset date), and there was a nearly two-year gap before Plaintiff again sought treatment in January 2013. T. 16, 505, 745. Moreover, while Plaintiff was provided with a knee sleeve to assist in walking long distances, he declined physical therapy and orthopedic care in February 2013 (T. 749), indicating that his knee pain did not cause him significant problems. With respect to Plaintiff's migraines, as ALJ Kane also noted, Plaintiff sought only sporadic treatment for this condition and that his prescribed medication controlled them. T. 16. Plaintiff also failed to identify either of these impairments in his applications. The medical evidence of record therefore does not compel the conclusion that these impairments were severe.

Moreover, although ALJ Kane did not specifically discuss Plaintiff's migraines and Osgood-Schlatter's disease at step two, the remainder of the decision makes it clear that ALJ Kane fully considered and factored these conditions into his RFC finding. In particular, the Court notes that ALJ Kane considered that Plaintiff reported that taking his prescribed Depakote was beneficial for

7

relieving his migraines, and that Plaintiff declined physical therapy or orthopedic care for his knee pain. T. 16. ALJ Kane specifically noted that Plaintiff had been assessed with Osgood-Schlatter disease, but explained that Plaintiff had failed to seek any follow up care. *Id*. Additionally, ALJ Kane included in the RFC finding a limitation of Plaintiff's ability to stand or walk, accounting for Plaintiff's knee pain. Plaintiff has not shown any other limitations that should have been assessed as a result of either his migraines or knee pain, and has therefore failed to demonstrate that ALJ Kane's omission of migraines and Osgood-Schlatter's disease at step two had any meaningful impact on the remainder of his analysis, or that explicitly considering these impairments at step two would or could have resulted in a different outcome. Accordingly, the Court finds that any error by ALJ Kane at step two was harmless and does not necessitate remand.

## II. Evaluation of Consultative Examiners' Opinions

Plaintiff next argues that ALJ Kane failed to properly evaluate Plaintiff's consultative examiners, Dr. Luna and Dr. Figueroa. The Court finds this argument without merit for the reasons discussed below.

### A. ALJ Kane Permissibly Assigned "Little Weight" to the Opinion of Dr. Figueroa

Plaintiff was examined by State consultative examiner Dr. Rita Figueroa on December 15, 2014. In her source statement, Dr. Figueroa opined that "Plaintiff may have a moderate limitation

8

for prolonged walking and standing due to left leg limp. There may be a mild limitation for activities requiring repetitive use of fine motor skills due to his wrist injury." No additional limitations were noted. T. 702.

In his decision, ALJ Kane assigned "little weight" to Dr. Figueroa's opinion, noting it was inconsistent with Plaintiff's reported activities of being able to help with oil changes and rotating tires at his uncle's auto body shop. T. 18-19. At the May 15, 2015 hearing, Plaintiff testified he sweeps his uncle's shop, helps his uncle with oil changes, and can lift car tires to help with tire rotations. T. 39-40.

As a threshold matter, the Court notes that the ALJ has discretion to weigh the opinion of a consultative examiner and attribute the appropriate weight based on his review of the entire record. *See Burnette v. Colvin*, 564 F. App'x 605, 605 (2d Cir. 2014) (finding that the ALJ properly exercised his discretion in giving little weight to the consultative examiner's opinion, as it was inconsistent with the record as a whole). Furthermore, the ALJ may properly discount a medical opinion where it is inconsistent with the claimant's own testimony regarding his "daily functioning." *Domm v. Colvin*, 579 F. App'x 27, 28 (2d. Cir. 2014).

Here, ALJ Kane's finding that Plaintiff's activities were inconsistent with moderate limitations for prolonged walking and standing and mild limitations for activities requiring repetitive

9

use of fine motor skills was reasonable and consistent with the evidence of record. Moreover, and as ALJ Kane noted, Dr. Figueroa's physical examination of Plaintiff demonstrated a full range of motion in the cervical and lumbar spines with full strength in all extremities. T. 18. Accordingly, the Court finds that ALJ Kane permissibly exercised his discretion in affording little weight to Dr. Figueroa's opinion.

### B. ALJ Kane's Failure to Explicitly Assign Weight to the Opinion of Dr. Luna was Harmless Error

Plaintiff was also examined by State consultative examiner Dr. Kristina Luna on December 15, 2014. In her source statement, Dr. Luna opined "[t]he claimant has no limitations in his ability to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, perform complex tasks independently, and make appropriate decisions. He is mildly limited in his ability to learn new tasks and relate adequately with others. He is moderately limited in his ability to appropriate[ly] deal with stress. Difficulties are caused by distractibility and cognitive deficits." T. 694.

In his decision, ALJ Kane found Dr. Luna's opinion to be inconsistent with the evidence of record, including Plaintiff's testimony. T. 18. Specifically, ALJ Kane noted Plaintiff's full-scale IQ score of 103 and that his testimony indicated he is capable of dealing with stress and performing complex tasks such as

fixing cars and playing computer games. *Id.* ALJ Kane also noted Plaintiff's therapy records, consultative evaluation reports, and testimony indicate he is able to control his anger and deal with others. *Id.* However, despite ALJ Kane's thorough discussion of Dr. Luna's evaluation and his reasoning for not fully incorporating it into the RFC, he did fail to specifically identify the weight he gave to it.

ALJ Kane's failure to expressly assign a weight to Dr. Luna's opinion does not necessitate remand. Remand is not warranted "'[w]here application of the correct legal standard could lead to only one conclusion.'" *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (quoting *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998)) (declining to remand for consideration of an improperly excluded physician's report which was essentially duplicative of evidence already considered by the ALJ); *see also Williams v. Colvin*, 98 F.Supp.3d 614, 632 (W.D.N.Y. 2015) (ALJ was not required to expressly weigh the medical opinion of a consultative examiner when the specific assignment of weight to that opinion would not have impacted the outcome of the ALJ's decision); *Blabac v. Comm'r of Soc. Sec.*, No. 308-CV-0849, 2009 WL 5167650, at *9 (N.D.N.Y., Dec. 18, 2009) (collecting cases finding harmless error where the opinions the ALJ failed to weigh either did not conflict with the ALJ's findings or written consideration of the opinions would not have changed the outcome of the ALJ's decision.).

Here, ALJ Kane fully discussed and analyzed Dr. Luna's opinion in his decision. Moreover, the majority of Dr. Luna's opinion assessed mild or no limitations, which is fully consistent with ALJ Kane's RFC finding. As to those limitations ALJ Kane rejected, he explained why they were not incorporated into the RFC assessment. It is therefore clear from the record that ALJ Kane afforded Dr. Luna's opinion some weight. The ALJ's failure to explicitly make a statement to that effect was harmless error.

### III. Plaintiff's Treatment History

Plaintiff's third and final argument is that ALJ Kane improperly used Plaintiff's failure to seek treatment as proof that his conditions were not as disabling as alleged. The Court finds no merit to this argument.

An ALJ is permitted to considered a claimant's failure to seek treatment for alleged disabilities when evaluating the claimant's credibility with respect to statements regarding the extent of their impairments. *Miller v. Colvin*, 85 F.Supp.3d 742, 755 (W.D.N.Y. 2015); *see also Arnone v. Bowen*, 882 F.2d. 34, 39 (2d Cir. 1989)(finding claimant's failure to seek medical attention "seriously undermine[d]" contention of disability). Furthermore, "[i]n making a credibility determination, [the ALJ] 'is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question.'" *Greene v. Colvin*, 936 F.Supp.2d 216,

at 226 (W.D.N.Y. 2013) (quoting *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010)). Rather, the ALJ "may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence of the record." *Id.*

During the relevant period, Plaintiff occasionally went to the hospital for injuries, including on-going back pain, dental pain, and knee sprain and possible wrist fracture, but diagnostic imaging revealed little evidence of severe impairments and Plaintiff was never admitted for his injuries. T. 441, 468, 483, 498. At the May 15, 2014 hearing, Plaintiff testified repeatedly that he does not want to go to the doctor or receive treatment for his medical conditions. T. 50-52. At the December 14, 2012 hearing, Plaintiff testified there were many times he thought he should see a doctor but did not because he does not like public places or being around people. He further testified he does not trust doctors and thinks they are using him as a "test guinea pig" and are "just out to get their money for the drugs they prescribe." T. 99-100.

Plaintiff was incarcerated for approximately two years during the relevant period. While incarcerated, Plaintiff received some mental health treatment, which focused on the issues complained of during his incarceration. Treatment records reveal he responded well to therapy. T. 619-21. During his incarceration, Plaintiff was also prescribed Depakote for his migraines and received Motrin for his complaints of hip and arm pain. T. 643. However, in February

13

2013, Plaintiff declined any physical therapy or orthopedic care for his knee pain caused by Osgood-Schlatter's disease. T. 748-49. ALJ Kane noted that since Plaintiff's release in 2014, he has received little medical treatment because he does not want to see any doctors. T. 17.

In his decision, ALJ Kane detailed Plaintiff's sporadic medical treatment, including the treatment he received while incarcerated and the lack of treatment he has sought or received since his release in 2014. T. 16-17. Based on the foregoing, as well as Plaintiff's reported daily activities, ALJ Kane found Plaintiff's allegations of disability were not wholly credible. T. 19. This finding is supported by the record, as discussed above and is well within ALJ Kane's discretion. *See Naval v. Astrue*, 303 F. App'x 18, 20 (2d Cir. 2008) (ALJ appropriately relied on absence of medical records "to find that [claimant's] claims of total disability were undermined by his failure to seek regular treatment for his allegedly disabling condition"); *Salvaggio v. Apfel*, 23 F. App'x 49, 51 (2d Cir. 2001) (holding that "the plaintiff's choice to seek only minimal medical attention of her symptoms . . . supports the finding that the plaintiff was not under a disability"). Accordingly, the Court finds no error in ALJ Kane's credibility assessment. The Court accordingly further finds that remand of this matter is not warranted.

14

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Docket No. 9) is denied and the Commissioner's motion for judgment on the pleadings (Docket No. 11) is granted. Plaintiff's complaint is dismissed in its entirety with prejudice. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

S/Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

Dated:  July 16, 2018
        Rochester, New York